IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KELLY LIDDIARD,<br><br>        Plaintiff,<br><br>v.<br><br>MATT PEDERSON, FRANK YOUNG, KAREN CLEMES, MARK WIESENBERG, MATTHEW HOLLAND, ROBIN ESCOBAR, AZUCENA AGUAYO, BRETT MCKEACHNIE, and DOES I-X,<br><br>        Defendants. | MEMORANDUM DESCISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 2:19-cv-00072-JNP-DBP<br><br>District Judge Jill N. Parrish |

The Utah Valley University Police Department (UVUPD) fired Kelly Liddiard from his position as a police officer. Liddiard sued eight individuals, alleging that they deprived him of his constitutional rights during the process of his termination. Before the court is a motion for summary judgment brought by the defendants. [Docket 20]. The court GRANTS IN PART AND DENIES IN PART the motion for summary judgment.

**FACTS**

John Brewer was the chief of the UVUPD. He initiated a plan to convert UVU funds intended for ammunition for the training of new officers into a slush fund to be used for other UVUPD expenses. Under this plan, the Utah Valley University Police Academy used funds set aside for training ammunition to purchase cases of .22 ammunition. Chief Brewer then designated the ammunition as "surplus" and transferred it to the UVUPD to be offered for sale to UVUPD employees for their personal use. The employees paid less than the retail cost of the ammunition

and did not pay sales tax for the transaction. The money collected for the ammunition was then placed in an informal slush fund that was used to purchase food and pay for other miscellaneous department expenses.

Chief Brewer directed Liddiard to help administer the ammunition sales program. Liddiard sold the ammunition to UVUPD employees and collected the money. Liddiard kept the cash collected from the sales in a desk drawer along with receipts for purchases made from the collected funds. Liddiard sold a total of seven cases of ammunition at $200 per case. Liddiard purchased two of these cases for himself.

In March 2017, Chief Brewer retired. In April 2017, Utah Valley University (UVU) completed an internal audit triggered by an anonymous tip submitted to UVU that the police department was selling ammunition. The audit report criticized the ammunition sales program, noting that it circumvented internal procurement and cash controls. The audit report also noted that the sale of ammunition at below retail cost and without sales tax potentially violated the Utah Public Officers' and Employees' Ethics Act, which prohibits public officers and employees from using their official position to "secure special privileges or exemptions for himself or others." UTAH CODE § 67-16-4(1). Additionally, the report concluded that private sales of ammunition to UVUPD employees violated state surplus property laws and UVU surplus property policies. The audit report recommended that UVU "[d]etermine appropriate sanctions, up to and including termination, for Sergeant Liddiard and the other employees that were involved."

In June 2017, UVU hired Matt Pedersen as the new chief of UVUPD. On July 20, 2017, Chief Pedersen called Liddiard into his office for a meeting. Chief Pedersen handed Liddiard a letter notifying him of the department's intent to terminate his employment effective July 28, 2017. The letter stated that the reason for the anticipated termination was Liddiard's participation in the

2

ammunition sales plan as well as Liddiard's own purchases of ammunition from the UVUPD. The letter further stated:

> During our meeting on July 20, 2017, you will receive this notice of intent to terminate your employment. During the meeting, you will have an opportunity to be heard and to respond to these concerns. In addition, you will have up to one week (five business days) after the meeting to be heard and respond. If you would like to provide any reasons and facts for why your termination should not proceed, please provide such information to me in writing by **July 28, 2017 at 5 p.m.** On or after **July 28, 2017,** you will be notified if the intent to terminate becomes final.

Contrary to the representation in the letter, Liddiard was not afforded an opportunity to be heard during the July 20, 2020 meeting.

On July 26, 2017, Liddiard's lawyer delivered a letter to Chief Pedersen arguing that the notice of intent to terminate violated Liddiard's constitutional rights. The letter also argued that Liddiard should not be terminated. On July 31, 2017, Chief Pedersen sent a letter to Liddiard confirming that he had been terminated from his employment effective July 28, 2017. The letter acknowledged that Chief Pedersen had received and reviewed the letter from Liddiard's lawyer. But chief Pedersen stated that the letter did not contain any facts or explanations that had changed his decision to terminate Liddiard.

Liddiard requested a termination review hearing, which was held on February 28, 2018 before a three-member panel. In accord with UVU policies, Liddiard bore the burden of proving that the factual basis for his termination was inaccurate or that his termination was arbitrary and capricious. Liddiard was permitted to submit a five-page statement to the panel members. UVU's rules normally limit a terminated employee to 90 minutes of presentation time before the panel. But the panel allowed Liddiard a total of 209 minutes to present his case. An individual was tasked

with recording the hearing, but due to an unknown error or malfunction, no audio recording was preserved.

After the hearing, the review panel members signed a memorandum finding that Liddiard's termination was not arbitrary or capricious and delivered it to the President of UVU, Mathew Holland. After reviewing the memorandum, President Holland upheld the decision to terminate Liddiard.

Liddiard subsequently sued Chief Pedersen, Frank Young (UVU Associate Vice President of Facilities), Karen Clemes (general counsel for UVU), Mark Wiesenberg (UVU Associate Vice President of Human Resources), President Holland, Robin Escobar (review panel member), Azucena Aguayo (review panel member), and Brett McKeachnie (review panel member).[1] Liddiard alleged four causes of action against these defendants: (1) depravation of procedural due process, (2) depravation of substantive due process, (3) depravation of a liberty interest without due process, and (4) depravation of a name-clearing hearing.

Rather than answer Liddiard's complaint or file a Rule 12 motion that would toll the time to answer the complaint, the defendants immediately moved for summary judgment on all four causes of action.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

---

[1] For the most part, the parties do not specifically discuss how each of the eight named defendants allegedly deprived Liddiard of his constitutional rights in their briefs. Instead, they largely refer to the defendants in the aggregate. Because the court determines that the arguments of the parties do not turn on the specific actions of any particular defendant, the court also refers to the defendants collectively in this Order.

56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment on a claim is required if the party that bears the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## ANALYSIS

### I.      PROCEDURAL DUE PROCESS

Tenured public employees have a property right to their continued employment and cannot be deprived of that right without procedural due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39 (1985); *Carnes v. Parker*, 922 F.2d 1506, 1509–10 (10th Cir. 1991). A protected employee is entitled to both pre-termination and post-termination procedures that afford the employee notice of the reasons for the termination and an opportunity to be heard. *Loudermill*, 470 U.S. at 546. Liddiard asserts that the defendants deprived him of his procedural due process rights both before and after his termination.

The defendants argue that they are entitled to summary judgment on this claim because the doctrine of qualified immunity shields them from liability. "When a defendant raises a qualified immunity defense, the court must dismiss the action unless the plaintiff shows that (1) the defendant violated a statutory or constitutional right, and (2) the right was clearly established at the time of the violation." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). A court "may address these requirements in any order." *Id.* "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing

violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (citation omitted). The clearly established prong will be met if there is "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (citation omitted).

The court first addresses the defendants' arguments that they are immune to suit for Liddiard's pre-termination procedural due process claims. The court then turns to the post-termination procedural due process claims.

      *A.*      *Pre-Termination Procedural Due Process*

Liddiard argues that the defendants violated his pre-termination procedural due process rights in two respects.

      1)      Predetermined Outcome

Liddiard first argues that the pre-termination process afforded to him was inadequate because the outcome was predetermined. In support of this argument, Liddiard cites an unpublished memorandum decision issued by the Ninth Circuit and two district court rulings. *See D'Angelo v. Winter*, 403 F. App'x 181, 182 (9th Cir. 2010) (unpublished) ("A hearing with a predetermined outcome does not satisfy due process."); *Levesque v. Town of Vernon*, 341 F. Supp. 2d 126, 134 (D. Conn. 2004) (denying motion for summary judgment because the plaintiff "may be able to show that the result of the pretermination hearing was pre-ordained."); *Wagner v. City of Memphis*, 971 F. Supp. 308, 318–19 (W.D. Tenn. 1997) (". . . when the evidence establishes that the outcome of a municipal employee's pre-termination hearing has been predetermined regardless of the proof presented, the concerns and goals of the pre-termination hearing as set forth in *Loudermill* have not been met.").

The defendants are entitled to qualified immunity on Liddiard's predetermined outcome claim because Liddiard failed to carry his burden to show that the defendants violated a right that "was clearly established at the time of the violation." *See Mayfield*, 826 F.3d at 1255. Liddiard failed to cite a single Tenth Circuit case that would have notified the defendants that a predetermined outcome to the pre-termination process would violate his procedural due process rights. Moreover, the unpublished Ninth Circuit opinion and two district court rulings cited by Liddiard are insufficient to show that "the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains." *Brown*, 662 F.3d at 1164 (citation omitted).[2]

        2)      Adequacy of Pre-Termination Procedure

Second, Liddiard argues that the only pre-termination hearing provided to Liddiard was the surprise meeting on July 20, 2017. Liddiard asserts that he was not given notice that he would be terminated before this meeting and that he was not afforded an opportunity to respond to the charges against him during the meeting. In other words, Liddiard asserts that because the July 20, 2017 meeting did not satisfy the demands of procedural due process, the defendants are not entitled to qualified immunity.

---

[2] Liddiard also argues that the court should deny summary judgment because he has not had an opportunity to conduct discovery to find facts showing that the defendants had predetermined the outcome of his pre-termination process. *See* FED. R. CIV. P. 56(d). But the defendants are entitled to qualified immunity on this claim regardless of whether the outcome was predetermined because Liddiard has not shown that predetermination was clearly prohibited under Tenth Circuit law.

Additionally, the defendants objected to some of Liddiard's evidence of predetermination contained in a declaration, arguing that it is inadmissible hearsay. Because the court's qualified immunity analysis does not turn on this evidence, the court need not rule on the defendants' hearsay objection.

Liddiard's argument, however, ignores the pre-termination procedure that was provided to him to challenge his pending termination. The letter Chief Pedersen gave to Liddiard on July 20, 2017, informed him that he had seven days to provide a written response that listed "reasons and facts for why [Liddiard's] termination should not proceed." Liddiard's attorney delivered a letter to Chief Pederson six days later providing reasons why Liddiard should not be terminated.

The Supreme Court has laid out the procedural due process required before a tenured public employee is terminated:

> The essential requirements of due process [prior to termination] . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person *or in writing*, why proposed action should not be taken is a fundamental due process requirement. The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Loudermill*, 470 U.S. at 546 (emphasis added). The process afforded by Chief Pedersen met the basic requirements laid out by the Court. The letter Chief Pedersen delivered to Liddiard notified him of the charges against him and the evidence supporting those charges. Liddiard was then given seven days to provide a written response to the charges and reasons why he should not be terminated. Liddiard has not met his burden of citing caselaw that would establish that this process was inadequate in any respect. Accordingly, the defendants are entitled to qualified immunity on Liddiard's claim that the pre-termination procedures afforded by the defendants were inadequate.

### B.    *Post-Termination Procedural Due Process*

Liddiard also raises a number of arguments that the post-termination review proceedings afforded by UVU were inadequate.

1)  The Burden of Proof

First, Liddiard asserts that the defendants violated his procedural due process rights by imposing a clear and convincing burden of proof on him. Liddiard contends that the defendants should have been on notice that shifting the burden to him was improper based upon *Montgomery v. City of Ardmore*, 365 F.3d 926 (10th Cir. 2004). In that case, a city fired a police officer. *Id.* at 932. The officer sued the city, alleging that it had infringed his procedural due process rights by providing inadequate pre-termination and post-termination proceedings. *Id.* at 933. The district court subsequently granted summary judgment in favor of the city. *Id.* On appeal, the Tenth Circuit reversed the grant of summary judgment on the pre-termination procedural due process claim. That court held that the city had not provided *any* pre-termination process to the police officer because the city had fired the officer before it had even informed him of his termination. *Id.* at 936. The Tenth Circuit then noted that when reviewing the adequacy of the post-termination procedures, "it may be improper to place the burden of proof on the employee when the employee has been offered 'little or no opportunity . . . to present his side of the case' in the pre-termination process. Such is the case here." *Id.* at 938 (citation omitted).

Liddiard argues that, based upon *Montgomery*, the defendants should have known that it was improper to place the burden of proof on him during the post-termination hearing because he did not have a sufficient opportunity to present his case in the pre-termination process. But *Montgomery* only gives notice that the burden of proof may not be shifted to the employee if the employer provides no pre-termination process. Granted, the holding of *Montgomery* leaves open the possibility that where the employee receives only some minimal opportunity "'to present his side of the case' in the pre-termination process," burden shifting would be improper. *Id.* But *Montgomery* does not provide a clear indication of where the line lies between adequate process

9

that would permit burden shifting and inadequate process that would not permit burden shifting. In order to show that the defendants violated a clearly established right, Liddiard must show that the right was "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix*, 136 S. Ct. at 308. Liddiard has not cited any precedent that would cause an official to know that giving him seven days to provide a written response to the charges against him was so inadequate that UVU could not shift the burden to him during the post-termination proceedings. Thus, the defendants are entitled to qualified immunity on this claim.

2)      Cross-Examination of Witnesses

Liddiard also argues that the defendants violated his procedural due process rights by limiting his ability to cross-examine witnesses during the post-termination review hearing. Liddiard asserts that *McClure v. Indep. Sch. Dist. No. 16*, 228 F.3d 1205 (10th Cir. 2000) clearly establishes that these limitations were contrary to the law. In *McClure*, a school district notified an elementary school principal that cause might exist to terminate her employment. *Id.* at 1209. At a hearing on her termination, the district introduced into evidence thirteen affidavits of district employees making accusations against the principal. *Id. at* 1209–10. The school district decided to terminate the principal, and she sued the district. *Id.* at 1210. The district court determined that the school district's use of the affidavits violated the principal's due process rights because she was denied the opportunity to cross-examine the affiants regarding their accusations. *Id.* On appeal, the Tenth Circuit affirmed. That court held that if "issues of morality and/or professional ethics" are involved, an employee is entitled to cross-examine adverse witnesses unless the employee admits to facts that made cross-examination unnecessary. *Id*. at 1211–12.

Relying upon *McClure*, Liddiard argues that the defendants violated clearly established law by not permitting him to adequately cross-examine witnesses during his post-termination hearing.

10

First, he asserts that that the defendants unconstitutionally limited his cross-examination of Chief Pedersen. Although Chief Pedersen testified at the hearing and Liddiard was permitted to cross-examine him, the defendants placed some limits on Liddiard's cross-examination. In a document summarizing its rulings, the hearing panel stated that Liddiard

> was limited in his cross-examination of Chief Pedersen after UVU called him to testify in its case in chief. The reason for the limits was that Grievants and the University are expected to make choices about how best to use their allotted time to address the issues. Time is not unlimited. . . . [M]uch of Mr. Liddiard's questioning of Chief Pedersen was cumulative, the Panel understood the points he was trying to make through the questioning so further testimony in that area was not needed.

Liddiard has not pointed to any accusations Pedersen made during the hearing involving his morality or professional ethics on which he was not permitted to cross-examine. Instead, the evidence before the court shows that the hearing panel prohibited Liddiard only from posing cumulative questions during cross-examination due to time constraints.[3] Nothing in *McClure*, would suggest that an employee's right to cross-examine adverse witnesses also includes the right to prohibit the employer from imposing limits on cumulative questioning.

Liddiard also complains that he was not able to cross-examine Val Petersen. But Peterson was not called as a witness. *McClure* states that an employee must be allowed to challenge adverse testimony through cross-examination. Where no testimony is given, there is no right to cross-examination.

---

[3] Liddiard states in his brief that he disputes the claim that his questions were cumulative. But he cites no affidavit or other evidence to back up this claim. A party opposing summary judgment must cite record evidence to show a dispute of material fact exists. FED. R. CIV. P. 56(c)(1). Bald denials are insufficient.

Finally, Liddiard argues that limits placed upon the testimony of Justin Sprague violated the holding of *McClure*. Prior to the hearing, the panel ruled that "Mr. Sprague may be called to testify as to his knowledge of ammunition sales to employees. He may not be questioned as to whether he submitted the ethics complaint." But excluding a subject matter from questioning does not run counter to *McClure*, which stands for the proposition that employees must be allowed to cross-examine adverse witnesses regarding accusations of moral failings or lapses of professional ethics made against the employee. Where there is no testimony on a given subject, there is no right under *McClure* to cross-examine.

The court concludes, therefore, that the defendants did not clearly violate Liddiard's *McClure* cross-examination rights. The defendants are entitled to qualified immunity on this claim.

### 3) President Holland's Review

After the review hearing, the panel signed a memorandum finding that Liddiard's termination was not arbitrary or capricious and delivered it to President Holland. Liddiard was not afforded an opportunity to submit a response memorandum. After reviewing the memorandum, President Holland upheld the decision to terminate Liddiard.

Liddiard argues that President Holland's review did not comply with due process. Liddiard also argues that the defendants should have known that this process was inadequate based upon a concurring opinion from the Ninth Circuit regarding the review of an order certifying a labor union as a collective bargaining representative. *See Bell Foundry Co. v. N.L.R.B.*, 827 F.2d 1340, 1347 (9th Cir. 1987) (Lovell, District Judge, Concurring) ("[T]he [National Labor Relations Board's] failure to review the entire record before the Regional Director was held to lead to 'rubber stamp' review raising serious due process problems.").

The defendants are entitled to qualified immunity on this claim for two reasons. First, a citation to a single concurring opinion from the Ninth Circuit is insufficient to show that a right had been clearly established in the Tenth Circuit at the time of the alleged violation of Liddiard's due process rights. *See Brown*, 662 F.3d at 1164. Second, *Bell Foundry* dealt with the adequacy of the National Labor Relations Board's review procedures. This legal precedent, therefore, was not specific enough to notify the defendants that UVU's procedures for reviewing a public employee's post-termination hearing were inadequate. *See Mullenix v. Luna*, 136 S. Ct. at 308 ("A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" (citation omitted)). Thus, Liddiard has not shown that the defendants had notice that the President Holland review process was inadequate or even necessary.

4)      Lack of a Recording and Length of the Hearing

Liddiard also argues that the defendants violated his due process rights by failing to record his post-termination hearing and by limiting the presentation of his case to a few hours and a five-page written statement. But Liddiard cites no cases holding that the absence of a recording or that restrictions placed upon an employee's presentation of his or her case are due process violations. Once a defendant raises a qualified immunity defense, the plaintiff bears the burden of showing that the right that the defendant allegedly infringed was "clearly established at the time of the conduct at issue." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (citation omitted). Because Liddiard has not cited any caselaw that clearly established the rights that he claims were violated, the defendants are entitled to qualified immunity.

13

C.    *Conclusion*

Liddiard has not shouldered his burden of refuting the defendants' qualified immunity defense. Thus, the defendants are entitled to qualified immunity for all of Liddiard's procedural due process claims. The court grants summary judgment in favor of the defendants on Liddiard's procedural due process cause of action.

## II.    SUBSTANTIVE DUE PROCESS

Liddiard asserts that the defendants also deprived him of his substantive due process rights by terminating him. "'[S]ubstantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' or interferes with rights "implicit in the concept of ordered liberty. *United States v. Salerno*, 481 U.S. 739, 746 (1987). "The Supreme Court has described two strands of the substantive due process doctrine. One strand protects an individual's fundamental liberty interests, while the other protects against the exercise of governmental power that shocks the conscience." *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008).

The defendants argue that they are entitled to summary judgment on this claim for two reasons. First, they assert that they are protected by qualified immunity. Second the defendants contend that the undisputed facts show that they should prevail as a matter of law.

A.    *Qualified Immunity*

The defendants argue that they are entitled to qualified immunity because Tenth Circuit caselaw does not clearly establish that Liddiard's property right to his continued employment is protected by substantive due process. They contend that two Tenth Circuit case have held that public employment is not afforded substantive due process protections. But the cases cited by the defendants do not stand for that proposition. In *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1257 (10th Cir. 1998), the Tenth Circuit noted that it had not yet established whether substantive due

14

process protected a police officer's rank. *Hennigh* did not deal with a police officer's right to continued employment. Additionally, in *Koessel v. Sublette Cty. Sheriff's Dep't*, 717 F.3d 736, 749 (10th Cir. 2013), the Tenth Circuit stated that "we have not determined whether public employment is a fundamental liberty interest protected by substantive due process." But the *Koessel* court was referring only to the fundamental liberty interest strand of substantive due process. *Koessel* went on to analyze a public employee's claim that his termination violated the "shocks the conscience" strand of substantive due process. Thus, the cases cited by the defendants do not bar Liddiard's substantive due process claim.

Liddiard, on the other hand, cites Tenth Circuit authority holding that a tenured public employee may raise a substantive due process challenge to his or her termination. *Garcia v. City of Albuquerque*, 232 F.3d 760, 770 (10th Cir. 2000) ("This court has held that a tenured employee 'possessed a property interest deserving of substantive protections of the Fourteenth Amendment.'" (citation omitted)); *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998) (same). Accordingly, Liddiard has shouldered his burden of showing that Tenth Circuit authority notified the defendants that the termination of his employment could violate substantive due process protections. Accordingly, the court concludes that the defendants are not entitled to qualified immunity for Liddiard's substantive due process claim.

B.     *Summary Judgment*

The defendants also argue that they are entitled to summary judgment because the undisputed facts demonstrate that Liddiard's substantive due process claim fails as a matter of law. Liddiard argues that summary judgment should be denied because there are disputed facts that must be resolved by a jury. Liddiard also argues that summary judgment is improper because he has not had the opportunity to conduct discovery for this claim.

Under Rule 56(d) of the Federal Rules of Civil Procedure, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . defer considering the motion [for summary judgment] or deny it." Due to the unique procedural posture of the defendant's motion for summary judgment, the parties have not yet conducted discovery in this case. That is because the defendants—instead of either filing a timely answer to the complaint or a motion under Rule 12 that would toll the time to answer—filed a motion for summary judgment soon after Liddiard filed his complaint. One of Liddiard's attorneys filed a declaration under Rule 56(d) averring that discovery is needed to uncover evidence in opposition to the motion for summary judgment, including "communications, testimony, or other documents showing that the decision to terminate Liddiard was arbitrary and capricious and not proportional or warranted."

Because Liddiard has not yet had an opportunity to develop the factual record through discovery, the court agrees that a motion for summary judgment on the substantive due process claim is premature. "[S]ummary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017) (alterations in original) (citation omitted). The court, therefore, denies the defendant's motion for summary judgment on the substantive due process claim. After the close of discovery, the defendants may file a renewed motion for summary judgment on this claim if they wish to do so.

## III.   DEPRAVATION OF A LIBERTY INTEREST WITHOUT DUE PROCESS/DEPRAVATION OF A NAME-CLEARING HEARING

"A public employee has a liberty interest in his good name and reputation as they relate to his continued employment." *McDonald v. Wise*, 769 F.3d 1202, 1212 (10th Cir. 2014). "The

government infringes upon that interest when: (1) it makes a statement that 'impugn[s] the good name, reputation, honor, or integrity of the employee'; (2) the statement is false; (3) the statement is made during the course of termination *and* 'foreclose[s] other employment opportunities'; and (4) the statement is published, in other words disclosed [publicly]." *Id.* (first and second alteration in original) (footnote and citation omitted). "Once infringement of a liberty interest is established, the employee must show that he was not afforded an adequate name-clearing hearing that comports with the Due Process Clause." *Nixon v. City & Cty. of Denver*, 784 F.3d 1364, 1368 (10th Cir. 2015).

Liddiard has pled two duplicative causes of action based upon his claim that he was deprived of a liberty interest in his good name without being provided with an adequate name-clearing hearing. He alleges in his third cause of action that the defendants deprived him of his liberty interest in his good name without due process. But the process due under the third cause of action is a name-clearing hearing. Liddiard asserts in his fourth cause of action that he was deprived of a name-clearing hearing. Liddiard, however, was entitled to a name-clearing hearing only if the defendants deprived him of the liberty interest referenced in the third cause of action. Thus, the third and fourth causes of action are one and the same. Accordingly, the court addresses them jointly.

The substance of Liddiard's liberty interest claims is that the defendants made false statements impugning his good name in his personnel file. In particular, he claims that some of the allegations made in the July 20, 2017 termination notice letter were false. After his termination, Liddiard applied for a number of government jobs, including with the Utah Board of Pardons and Parole, the Division of Occupational and Professional Licensing, and two municipal police departments in the State of Utah. As part of the application process, he authorized the release of

17

his personnel file to these potential employers. Liddiard contends that UVUPD's release of his personnel file constituted publication of the false statements contained in the file and that he was not hired because of these statements. He further argues that he was not afforded an adequate name-clearing hearing to counteract the false statements in his personnel file.

The defendants argue that they are entitled to qualified immunity on Liddiard's liberty interest claims. The court concludes that the defendants are immune to liability because Liddiard has not shown that the defendants violated a clearly established right. Specifically, Liddiard has not pointed to caselaw that would notify the defendants that they had published any allegedly defamatory statements, nor has Liddiard shown that the defendants should have been on notice that the post-termination hearing—in which he was given an opportunity to challenge the allegations made against him—was not an adequate name-clearing hearing.

### A. Publication

Liddiard has not shown that controlling caselaw clearly establishes that the defendants publicized any defamatory statements for two reasons. First, he has not shown that it is clearly established that permitting other government agencies within the state of Utah to review his personnel file constituted anything other than permissible intra-government dissemination. The Tenth Circuit has held that "intra-government dissemination, by itself, falls short of the Supreme Court's notion of publication." *Asbill v. Hous. Auth. of Choctaw Nation of Oklahoma*, 726 F.2d 1499, 1503 (10th Cir. 1984). Over the years, the Tenth Circuit has applied the intra-government dissemination principle a number of times in mostly unpublished opinions. See *Ellison v. Roosevelt County*, 700 F. App'x 823, 832 (10th Cir. 2017) (unpublished); *Sky Harbor Air Serv., Inc. v. Reams*, 491 F. App'x 875, 886–87 (10th Cir. 2012) (unpublished); *Lollis v. City of Eufaula*, 249 F. App'x 20, 25 (10th Cir. 2007) (unpublished); *McCarty v. City of Bartlesville*, 8 F. App'x 867, 874 (10th

18

Cir. 2001) (unpublished); *Custodio v. Parker*, 65 F.3d 178 at *4 (10th Cir. 1995) (unpublished table decision); *Six v. Henry*, 42 F.3d 582, 586 (10th Cir. 1994); *Harris v. Blake*, 798 F.2d 419, 422 n.2 (10th Cir. 1986).

The Tenth Circuit has recently recognized, however, that it has not "precisely defined the scope of intra-government disseminations." *Alcorn v. La Barge*, 784 F. App'x 614, 619 (10th Cir. 2019) (unpublished); *see also Monroe v. City of Lawrence, Kan.*, 124 F. Supp. 3d 1097, 1129 n.116 (D. Kan. 2015) ("No precedent clearly defines 'intra-government dissemination.'"). The District of Kansas has reasoned that some Tenth Circuit opinions "suggest that 'intra-government' be understood as a term of art to cover 'intra-employer' communications." *Monroe*, 124 F. Supp. 3d at 1129 n.116. But in other cases, "the Tenth Circuit applied the 'intra-government dissemination' label to dissemination that occurred between separate government agencies—one the plaintiff's employer, the other not—engaged in different functions." *Id.* In a recent unpublished opinion, the Tenth Circuit held that the term "intra-government disseminations" applied "to communications between a municipal government and a state agency." *Alcorn*, 784 F. App'x at 619. The *Alcorn* court reasoned that there was "no meaningful distinction between applying the 'intra-governmental dissemination' standard to communications across units of government (such as between a city and county) and between a state and its sub-units." *Id.* Thus, communications between different agencies of the same state or sub-units of that state do not constitute publication. *Id.*

In sum, there is no binding Tenth Circuit authority that clearly holds that communications between UVUPD and other agencies of the State of Utah, such as the Board of Pardons or the Division of Occupational and Professional Licensing, or other sub-units of the state, such as municipal police departments, would amount to publication. Indeed, the most recent unpublished Tenth Circuit opinion to analyze the issue of intra-government disseminations suggests that the

communications Liddiard points to would not satisfy the publication element of a liberty interest claim.

There is also a second reason why the defendants were not on notice that they would be publishing the allegedly defamatory statements by providing the personnel file to other government employers. Liddiard himself authorized UVUPD to release his personnel file to other state agencies and municipal police departments. Because UVUPD released the contents of the files at Liddiard's request, it is not clear that the defendants can be liable for publishing statements contained in the files. At minimum, Liddiard cites no case that would have notified the defendants that they should have denied his request to release the files to potential employers in order to avoid depriving Liddiard of his liberty interest in his good name.

For these two reasons, the defendants are immune to suit because Liddiard has not demonstrated that that it is clearly established that the defendants published any false statements found in his personnel file.

### B.      Name-Clearing Hearing

Liddiard argues that even though he was given an opportunity to challenge the allegations made against him regarding his honesty and integrity at the post-termination hearing, this hearing was not a constitutionally adequate name-clearing hearing for two reasons. First, he asserts that the post-termination hearing was inadequate because it was adversarial. In support of this argument, Liddiard quotes an order  from the Southern District of Ohio, which states that a "name-clearing hearing is not an adversarial proceeding; rather it is a proceeding in which the employee is provided an opportunity to clear his or her name publicly." *Gunasekera v. Irwin*, 678 F. Supp. 2d 653, 663 (S.D. Ohio 2010). But Liddiard does not cite any Tenth Circuit authority for this proposition or mount an argument that this legal principle is well-accepted in other circuits. Indeed,

20

Tenth Circuit authority suggests that adversarial proceedings, such as a criminal trial or an arbitration hearing, can be adequate name-clearing hearings. *McDonald*, 769 F.3d at 1214.

Second, Liddiard contends that the post-termination hearing was inadequate because it was not open to the public. In support of this argument, he cites *McDonald*. In that case, the defendants informed the press that the plaintiff had been terminated because of "serious allegations of misconduct." *Id*. at 1209. The *McDonald* court held that an unemployment benefits hearing was not an adequate name-clearing hearing. *Id.* at 1214. In support of this holding, the court cited a Sixth Circuit opinion that discussed "the importance of a name-clearing hearing being comparably as public as the stigmatizing statements were in order to be effective." *Id.* (citing *Gunasekera v. Irwin*, 551 F.3d 461, 470 (6th Cir. 2009)).

But *McDonald* does not clearly establish that a nonpublic name-clearing hearing would be inadequate under the facts of this case. Here, there is no evidence that the defendants publicized any information to the news media. Where the allegedly stigmatizing statements were not widely publicized, it is not clear that Tenth Circuit law requires a public hearing. Because Liddiard has not met his burden of showing that the defendants violated a clearly established right by providing an inadequate name-clearing hearing, the defendants are immune to suit for a denial of a liberty interest without due process.

## CONCLUSION

For the reasons stated above, the court GRANTS IN PART and DENIES IN PART the defendant's motion for summary judgment. [Docket 20]. The court grants summary judgment in favor of the defendants on Liddiard's first cause of action for depravation of procedural due process and his third and fourth causes of action for depravation of a liberty interest without due process. The court denies summary judgment on Liddiard's second cause of action for depravation of

21

substantive due process under Rule 56(d). After the close of discovery, the defendants may file a renewed motion for summary judgment on this claim if they wish to do so.

DATED May 28, 2020.

BY THE COURT

Jill N. Parrish
United States District Court Judge